COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


HAMBREY MILTON CUDJOE
                                            OPINION BY
v.   Record No. 2607-94-2            JUDGE MARVIN F. COLE
                                      SEPTEMBER 24, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Robert L. Harris, Sr., Judge

        James F. Sumpter for appellant.

        Robert B. Beasley, Jr., Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


        In a jury trial, appellant, Hambrey Milton Cudjoe, was

convicted of rape and aggravated sexual battery.  He contends

that the trial court erred in disallowing one of his peremptory

challenges during the jury selection process and by requiring

that he strike another juror from the jury panel.[1]  We agree and

reverse.

        The appellant asserts that under Code § 19.2-262, he is

entitled to four peremptory strikes for any reason at all, so

long as the strikes do not constitute intentional racial or

gender discrimination in violation of the Equal Protection Clause

of the Federal Constitution and the principles of Batson v.

---

[1]In the order granting in part and denying in part the
petition for appeal, this Court refused to consider appellant's
contentions that the trial court erroneously sustained the
prosecutor's objections to comments made by appellant's counsel
during opening statement and final argument.

_Kentucky_, 476 U.S. 79 (1986).  He argues that his strike of Walter Craigie was based upon background and economic status, was race and gender neutral, and was nondiscriminatory.  Therefore, he argues that the trial court erred because his statutory right to strike Craigie was violated.  He asserts prejudice in the denial of this right because Craigie served as foreman of the jury when he should not have been on the jury at all.

The Commonwealth first contends that the appellant failed to preserve his _Batson_ claim for appellate review because he did not object to the trial court's disallowance of the Craigie strike.  Secondly, it contends that the trial court properly disallowed the Craigie strike because the appellant submitted a pretextual reason in support of it.  Thirdly, the Commonwealth argues that if the trial court did err, such error was harmless because the appellant was not prejudiced.

## I. Contemporaneous Objection Rule

At the conclusion of the jury selection process, the trial court invited _Batson_ challenges by asking counsel if they had any motions.  The Commonwealth objected to the appellant's striking Craigie, a Caucasian, from the panel.  Upon the trial court's request, the appellant explained the rationale of all his strikes.  After hearing from both sides, the trial court disallowed the Craigie strike.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the

2

objection [is] stated together with the grounds therefor at the time of the ruling . . . ." The purpose of Rule 5A:18 "is to allow correction of an error if possible during the trial, thereby avoiding the necessity of mistrials and reversals." Gardner v. Commonwealth, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986).

We find that the purpose of the rule has been satisfied in this case and Rule 5A:18 has not been violated. When the trial court made its ruling, it had the positions of both parties clearly before it and fully understood the issues involved. No further objection was necessary to preserve appellant's right to challenge the court's ruling on appeal.

## II. The **Batson** Challenge

In Swain v. Alabama, 380 U.S. 202 (1965), the United States Supreme Court reviewed the historical background of the peremptory challenge and explained the nature and purpose of the strike:

> The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another . . . ."

Id. at 220 (citations omitted).

3

A defendant has the "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson, 476 U.S. at 85-86. In Batson, the Supreme Court held that the use of peremptory strikes "to challenge potential jurors solely on account of their race" violates the Equal Protection Clause of the Federal Constitution. Id. at 89. The Batson principle has been extended to private litigants in civil cases, see Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991), to a defendant's peremptory strikes in criminal cases, see Georgia v. McCollum, 505 U.S. 42 (1992), and to "gender" discrimination. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994).

The Virginia Supreme Court has outlined the following procedure for determining whether a prosecutor exercised a peremptory strike to remove a prospective juror solely on account of the juror's race:

> A defendant must first establish a prima facie showing that the peremptory strike was made on the basis of race. At that point, the burden shifts to the prosecution to produce explanations for striking the juror which are race-neutral. Even if race-neutral, the reasons may be challenged by the defendant as pretextual. Finally, the trial court must decide whether the defendant has carried his burden of proving purposeful discrimination by the prosecutor in selecting the jury panel. On appeal, the trial court's findings will be reversed only if they are clearly erroneous.

Buck v. Commonwealth, 247 Va. 449, 450-51, 443 S.E.2d 414, 415 (1994) (citations omitted). See also James v. Commonwealth, 247 Va. 459, 461-62, 442 S.E.2d 396, 398 (1994); Riley v.

4

Commonwealth, 21 Va. App. 330, 333, 464 S.E.2d 508, 509 (1995); Robertson v. Commonwealth, 18 Va. App. 635, 637-38, 445 S.E.2d 713, 714-15 (1994); Barksdale v. Commonwealth, 17 Va. App. 456, 459-60, 438 S.E.2d 761, 763 (1993) (en banc).

The same procedure is applicable for determining whether a defendant unlawfully exercised a peremptory strike to remove a juror on the basis of race. The Commonwealth first must make a prima facie showing that the strike was made on the basis of race. The burden then shifts to the defendant to articulate racially-neutral explanations for striking the juror in question. If the court determines that the proffered reasons are race-neutral, the Commonwealth should be afforded an opportunity to show why the reasons, although race-neutral, are merely pretextual and racially based. Ultimately, the trial court must determine whether the Commonwealth has carried its burden of establishing purposeful discrimination. James, 247 Va. at 462, 442 S.E.2d at 398.

The facts in this case are undisputed. During the jury selection process, the original panel of twenty was extensively questioned by the trial judge and counsel for both parties. The record does not reflect the racial makeup of the panel. The prosecutor and defense counsel then exercised their statutory peremptory strikes.[2]

---

[2]Code § 19.2-262 provides in pertinent part:

> (2)Twelve persons from a panel of
> twenty shall constitute a jury in a felony

5

Upon completion of the peremptory strike process, the trial judge inquired whether counsel had any motions. Defense counsel objected to the Commonwealth's striking of three minority jurors, and the trial court asked the Commonwealth's attorney to explain the logic of her strikes. She explained that she struck Ms. Maroney because Maroney knew defense counsel; she struck Ms. Robinson because "[she] just picked up something in her attitude that was hostile or impatient," and she got "the feeling [Robinson] didn't want to be here." Robinson "didn't seem sincere" and demonstrated "a lack of attentiveness." The prosecutor struck Ms. Johnson because she did not work with children. The trial court disallowed the Johnson strike and required the Commonwealth to strike another juror. These objections were taken up out of the presence of the jury, disposed of, and are not at issue in this case except to disclose the racial composition of the venire.

The court asked the Commonwealth's attorney if she had any objections to the defendant's strikes. She responded that she objected to the defendant striking four Caucasians. Defense counsel corrected her, stating that he struck only three. The

case. . . .

    (3)The parties or their counsel, beginning with the attorney for the Commonwealth, shall alternately strike off one name from the panel until the number remaining shall be reduced to the number required for a jury.

6

trial court then asked defense counsel to state the basis for his strikes. He responded that he struck Mr. McCray because he had a granddaughter who worked as a guard for the City of Richmond; he struck Mr. Martin because his mother had been sexually abused by his father; and he struck Ms. Schumacher because she had been robbed at gun point.

The sole issue in the case involves the defendant's striking of Walter Craigie, a white juror. The parties agree that the record does not contain any information that would constitute a valid reason to remove Craigie from the panel for cause. As his reason for striking Craigie, defense counsel stated:

> I think he may have difficulty relating to this case based on his name. He was reading the Wall Street Journal, and has a lot of activities on Main Street. I don't think he could relate with a person of Mr. Cudjoe's standing.

The Commonwealth made no further argument concerning the appellant's strikes, and did not assert that the peremptory strike of Craigie was pretextual. The trial judge stated, "I am going to disallow that. He is entitled to serve [on] the jury." Craigie was permitted to remain on the jury panel and defense counsel was required to strike another juror from the jury list. The trial judge made no findings of fact nor did he rule explicitly that the strike of Craigie was racially motivated and, thus, a violation of the Equal Protection Clause. The judge did not state that the strike of Craigie was discriminatory in any way or that the explanation made by defense counsel was

7

pretextual.  The record does not indicate the racial mix of the jury as finally sworn.

The Commonwealth does not dispute the nondiscriminatory nature of the appellant's explanation.  Rather, the Commonwealth contends that because the trial court disallowed the strike, the analysis must turn upon whether the court believed that defense counsel actually struck juror Craigie for reasons relating to his business activities, or whether he struck Craigie because the appellant was black and Craigie was white.  Presuming that the trial court applied the proper standard, the Commonwealth asserts that the trial judge "simply did not believe defense counsel when he stated that he struck Craigie because of his financial and economic background, rather than because he was of a different race than the defendant."  Our review is confined to the Commonwealth's assertion that the reason for the strike was not believable and was therefore pretextual.

In the trial court, the Commonwealth did not argue that the explanation made by defense counsel was unbelievable.  The prosecutor said only that Craigie was white and the appellant was black.  She provided no argument to rebut the statement of defense counsel that he struck Craigie because of his background and economic status.  Furthermore, the trial court made no factual findings.  It said only that the Craigie strike was disallowed because Craigie was entitled to sit on the jury.  The court did not address whether the appellant's explanation was

8

nondiscriminatory or pretextual.

> "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." If not, the "decisive question" before the trial judge in a <u>Batson</u> analysis becomes "whether counsel's race-neutral explanation for a peremptory challenge should be believed," and, "once that has been settled, there seems nothing left to review."

<u>Barksdale</u>, 17 Va. App. at 459-60, 438 S.E.2d at 763 (citations omitted).

> In discharging this responsibility, trial judges enjoy the unique "opportunity" of personal observation and familiarity with "the general circumstances of the case." As a consequence, we must be controlled by the "accepted standards of review" and "uphold the trial court's decision if it is supported by credible evidence."

<u>Id.</u> at 460, 438 S.E.2d at 764 (citations omitted).

The trial judge presided at this trial and personally observed the entire panel, including the challenged jurors and the composition of the trial jury. Human characteristics are generally discernible and apparent to those present in the courtroom. However, if these factors are not documented in the record or recited in any findings of fact, we are unable to review them on appeal.

> Ordinarily, uncontradicted evidence should be accepted as true and cannot be wholly discredited or disregarded if not opposed to probabilities, even though the witness is an interested party. Uncontradicted evidence is not, however, necessarily binding on the court or the jury.

> It may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially when the witness is a party or is interested. Neither courts nor juries are required to believe that which they know from ordinary experience is incredible.

Stegall v. Commonwealth, 208 Va. 719, 722, 160 S.E.2d 566, 568 (1968).

The uncontradicted evidence in this record demonstrates that the appellant struck Craigie because of his financial and economic status. The Commonwealth admits that the appellant's explanation was race-neutral and nondiscriminatory. The record contains no evidence and no finding of fact by the trial judge to the contrary. The burden was upon the prosecutor, who challenged the strike, to prove intentional or purposeful discrimination. The Commonwealth had an opportunity to show why the appellant's facially neutral strike was merely pretextual. However, it offered no evidence, no argument, and no reason to support the position it now takes that the explanation was unbelievable. We, therefore, hold that credible evidence in this record fails to support the implication inherent in the trial court's decision that the peremptory strike of Craigie was based upon racial discrimination; that decision was clearly erroneous.

### III. Harmless Error

The Commonwealth contends that if the trial court erred in disallowing the Craigie strike, such action constitutes harmless error because the right to peremptory strikes is statutory and

10

not constitutional. The Commonwealth further asserts that appellant has shown no prejudice and the evidence amply supports the verdict.

"The right of [peremptory] challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury." Lewis v. United States, 146 U.S. 370, 376 (1892). Historically, the right could be exercised "without a reason stated, without inquiry and without being subject to the court's control." Id. at 378. See also Swain, 380 U.S. at 220.

Consistent with this practice, a litigant's exercise of peremptory challenges in Virginia in a criminal jury trial is governed by Code § 19.2-262(3). This statute provides a party absolute discretion in striking a specified number of the venire and contains no mechanism for the trial court to impair or interfere with a litigant's decisions in the process.

Within the last decade, however, the peremptory nature of the "peremptory" challenge has changed. Batson and its progeny hold that litigants no longer have an absolute right to a "peremptory" strike. Rather, the exercise of peremptory challenges is subject to judicial scrutiny to the extent such strikes implicate the Equal Protection Clause. See Batson, 476 U.S. at 89; Edmonson, 500 U.S. at 616; McCollum, 505 U.S. at 59; J.E.B., 511 U.S. at 128; Buck, 247 Va. at 450-51, 443 S.E.2d at 415; James, 247 Va. at 461-62, 442 S.E.2d at 398; Riley, 21 Va.

11

App. at 333, 464 S.E.2d at 509; Robertson, 18 Va. App. at 637-38, 445 S.E.2d at 714-15; Barksdale, 17 Va. App. at 459-60, 438 S.E.2d at 763.

As indicated above, the record in this case does not support a conclusion that the appellant's attempt to strike Craigie violated the Equal Protection Clause. In the absence of such a finding, the trial court, by disallowing the Craigie strike, denied the appellant only his statutory right to exercise peremptory strikes unimpaired by court intervention. Thus, the court's error was of statutory, not constitutional, dimension. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988).

The common law remedy for a trial court's impairment of a litigant's right to exercise a peremptory challenge was per se reversal. Hendrick v. Commonwealth, 32 Va. (5 Leigh) 767, 777 (1834) (without a finding of prejudice, reversing the defendant's conviction upon concluding that the trial court had violated his right to challenge any juror peremptorily). "It is well settled that the common law continues in force in Virginia except as altered by statute." Commonwealth v. Holland, 211 Va. 530, 532, 178 S.E.2d 506, 507 (1971). See Code § 1-10.

However, Code § 8.01-678, Virginia's harmless error statute, expressly provides that "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any

12

error committed on the trial." (Emphasis added). This statute "goes to the limit of harmless error" in all cases. <u>Dozier v. Morrisette</u>, 198 Va. 37, 41, 92 S.E.2d 366, 369 (1956) (discussing a predecessor to Code § 8.01-678). Applying Code § 8.01-678 where the trial court has committed non-constitutional error, we have stated:

> In Virginia, non-constitutional error is harmless "[w]hen it <u>plainly</u> <u>appears</u> from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

<u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (<u>en</u> <u>banc</u>).

In adopting Code § 8.01-678 and its predecessors, the General Assembly abrogated the common law remedy of automatic reversal for the impairment of a criminal defendant's exercise of peremptory strikes and replaced it with the harmless error standard of review. For this reason, we must apply Code § 8.01-678 and decide whether it plainly appears from this record that the trial court's non-constitutional error did not affect

13

the verdict.  See Lavinder, 12 Va. App. at 1009, 407 S.E.2d at 913 ("Each case must . . . be analyzed individually to determine if an error has affected the verdict").  In this case, no curative instruction could have been given that would have cured the error.  Therefore, the error is presumed to be prejudicial "unless it plainly appears that it could not have affected the result."  Caldwell v. Commonwealth, 221 Va. 291, 296, 269 S.E.2d 811, 814 (1980).  See also Mu'Min v. Commonwealth, 239 Va. 433, 442 n.4, 389 S.E.2d 886, 892 n.4, cert. granted in part, 498 U.S. 894 (1990), aff'd, 500 U.S. 415 (1991) (discussing non-constitutional harmless error).

The appellant attempted to remove Craigie from the jury by peremptory strike, which he had the statutory right to do.  In violation of this right, however, the trial court disallowed the strike, permitting Craigie to remain on the jury that convicted the appellant.  Craigie, in fact, served as the foreman of the jury.  Craigie's presence on the jury in conflict with appellant's expressed desire to remove him is indicative of prejudice.  Cf. Fuller v. Commonwealth, 14 Va. App. 277, 416 S.E.2d 44 (1992) (although the prosecutor removed the juror by peremptory strike, defendant was prejudiced by the seating of that juror in the venire because defendant was "denied the possibility of having another impartial person sit").

It is true that the evidence may be sufficient to support appellant's conviction; the record does not establish any lack of

14

soundness in the jury's verdict.  However, "a fair trial and substantial justice" mean a trial before a lawful and properly constituted jury.[3]  The appellant articulated a sound and acceptable basis for exercising his peremptory strike of Craigie.  The record does not "plainly" establish that, without Craigie on the jury, the verdict would have been the same.  We cannot say that another impartial juror inevitably would have voted to convict appellant.  Another juror may have deadlocked the jury.  He or she may even have persuaded other jurors to vote in favor of an acquittal.  In our judgment, the error was substantial and significant.  On this record, we cannot say that appellant had a fair trial on the merits and that substantial justice was achieved; likewise, we cannot say that, but for the error, the verdict would have been the same.

For the foregoing reasons, we reverse the appellant's convictions and remand to the trial court for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded</u>.

---

[3]The dissent contends that our holding effectively reinstates the common law <u>per</u> <u>se</u> rule of reversal.  We disagree.  The burden is on the appellee to demonstrate that the error was harmless.  Merely contending that the evidence was sufficient to support the conviction and that the juror was qualified do not, in our judgment, <u>ipse</u> <u>dixit</u>, establish that a fair trial occurred.  The cause of justice cannot be achieved in such a mechanical fashion.

15

Annunziata, J., concurring in part, and dissenting in part.

I concur with the majority opinion that the trial court's refusal to allow appellant to strike Craigie was erroneous. However, I find the trial court's error harmless and, therefore, would affirm the convictions.

As the majority notes, the error in this case is based on a statutory, not a constitutional mandate. Non-constitutional error is harmless

> [w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.

Code § 8.01-678; see Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc); Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926). In accordance with this well-settled principle governing appellate review in the Commonwealth, "[i]t has been well said that there is no such thing as a perfect trial. Every man is entitled to a fair trial and to nothing more . . . ." Oliver v. Commonwealth, 151 Va. 533, 541, 145 S.E. 307, 309 (1928).

In the present case, the trial court made six Batson rulings in reviewing appellant's exercise of his statutory right to "strike off one name from the panel until the number remaining shall be reduced to the number required for a jury." See Code § 19.2-262(3).[4] One of the rulings was erroneous. The majority

---

[4]Code § 19.2-262(3) provides,

> The parties or their counsel, beginning

16

concludes that, as a result of this error, appellant was deprived of a fair trial and substantial justice was not reached.

In finding reversible error, the majority opinion effectively reinstates the common law's per se reversal rule, which we all agree has been changed by statute.  Although the record discloses no prejudice which resulted from the trial court's error, the majority concludes that the presence of a juror "in conflict with appellant's expressed desire to remove him" was not harmless, noting that "another impartial juror with a different lifestyle [might not have voted] the same way that Craigie did."  Such an analysis misapplies the Lavinder test, which rests not on hypothetical circumstances but on what the record affirmatively establishes.

An impartial jury is essential to a "fair trial."  See Scott v. Commonwealth, 11 Va. App. 516, 519, 399 S.E.2d 648, 650 (1990) (en banc); Martin v. Commonwealth, 221 Va. 436, 445, 271 S.E.2d 123, 129 (1980) (if court fails to secure impartial jury for litigant, conviction must be reversed); Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911 (constitutional error reversible unless harmless beyond reasonable doubt).  Here, the record affirmatively establishes that appellant was tried by an impartial jury.  It is undisputed that each person on the panel

---

with the attorney for the Commonwealth, shall
alternately strike off one name from the
panel until the number remaining shall be
reduced to the number required for a jury.

17

of twenty from which the ultimate jury was selected was free from exception. While appellant lost the right to peremptorily strike one juror he should have been allowed to exclude, that juror stood "indifferent in the cause." Breedon v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976). In my opinion, the record plainly shows that the erroneous, non-constitutional ruling did not deprive appellant of a fair trial or substantial justice and, therefore, plainly did not affect the verdict.

Furthermore, the evidence in the case supports appellant's conviction beyond a reasonable doubt. See Overbee v. Commonwealth, 227 Va. 238, 245, 315 S.E.2d 242, 245 (1984); Lavinder, 12 Va. App. at 1007, 407 S.E.2d at 912 (to determine whether "it plainly appears that the error did not affect the verdict," court "must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues"); id. at 1011, 407 S.E.2d at 914 (Keenan, J. concurring) ("appellate court must consider the error and evaluate its effect, if any, upon how the fact finder weighed and balanced the evidence or resolved the credibility of witnesses"). When the sufficiency of the evidence is viewed together with the provision of an impartial jury which tried the matter, the conclusion is compelled that the record plainly shows that the erroneous denial of appellant's strike did not deprive appellant of a fair trial or substantial justice and, therefore, did not affect the verdict. Lavinder, 12 Va. App. at 1005, 407

18

S.E.2d at 911.

For the reasons stated, I would affirm the convictions.